UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2007 JAN -9  AM 10: 30

OFFICE OF THE CLERK

| | | |
|---|---|---|
| KEVIN PULVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.:** 4:07 CV 3006 |
| | ) | |
| CITY OF HASTINGS, LARRY G. | ) | |
| THOREN, in his official | ) | |
| capacity as Chief of Police of the City | ) | **VERIFIED COMPLAINT FOR** |
| of Hastings, CRAIG WALTON, | ) | **INJUNCTIVE RELIEF,** |
| individually and in his official capacity | ) | **DECLARATORY RELIEF AND** |
| as police officer, ADAM STORY, | ) | **DAMAGES PURSUANT TO** |
| individually and in his official capacity | ) | **42 U.S.C. § 1983** |
| as police officer, | ) | |
| | ) | |
| Defendants. | ) | |

Comes now Kevin Pulver, Plaintiff in this cause, and avers the following:

## INTRODUCTION

1.     This is a civil rights action brought by Plaintiff Kevin Pulver, seeking injunctive relief, declaratory relief, and damages, pursuant to 42 U.S.C. §§ 1983 and 1988, against Defendants City of Hastings, Larry G. Thoren, in his official capacity as Chief of Police for the City of Hastings, Officer Craig Walton, individually and in his official capacity as police officer, Officer Adam Story, individually and in his official capacity as police officer.

2.     This action is premised on the United States Constitution concerning the denial of Plaintiff's fundamental rights of due process and free speech by the Defendants named herein.

3.     Defendants' actions have deprived and will continue to deprive Plaintiff Kevin Pulver of his paramount rights and guarantees provided under the United States

Constitution.

4.     Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and municipal authority.

## JURISDICTION AND VENUE

5.     This action raises federal questions under the United States Constitution, namely the First and Fourteenth Amendments, and under federal law, 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988.

6.     This Court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

7.     This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3); the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202; and Plaintiff's prayer for relief regarding costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

8.     Venue is proper in the District Court of Nebraska, pursuant to 28 U.S.C. § 1391(b), because the claims arise in this district and the Defendants reside in this district.

## PLAINTIFF

9.     Plaintiff Kevin Pulver ("Mr. Pulver") resides in Adams County, Nebraska.

## DEFENDANTS

10.     Defendant City of Hastings is a municipal governmental authority, a subdivision of the State of Nebraska.

11.     Defendant Larry G. Thoren ("Chief Thoren") is the Chief of Police for the City of Hastings.  In his official capacity, he is responsible for the enforcement of the

2

City of Hastings's laws and ordinances.  Chief Thoren is sued in his official capacity.

12.    Defendant Officer Craig Walton ("Officer Walton") is a police officer with the City of Hastings in Hastings, Nebraska.  In his official capacity, he enforces the laws and ordinances pertaining to the City of Hastings.  Officer Walton is sued in both his official and individual capacities.

13.    Defendant Officer Adam Story ("Officer Story") is a police officer with the City of Hastings in Hastings, Nebraska.  In his official capacity, he enforces the laws and ordinances pertaining to the City of Hastings.  Officer Story is sued in both his official and individual capacities.

## FACTS

14.    Mr. Pulver is a plumbing and heating contractor.  He is also a professing Christian.

15.    As a tenet of his faith, Mr. Pulver attempts to share his religious beliefs with others on public ways.  He travels to public areas and shares his faith as weather permits, and his schedule allows, which is usually about twice a week.

16.    For this purpose, Mr. Pulver travels to public ways where he has access to a significant number of passers-by.

17.    While Mr. Pulver attempts to share his message in various public locations, he prefers to convey his convictions on public ways near college campuses. Mr. Pulver wants to address the propriety, morality, and wisdom of lifestyles that are relatively common with college students today.  For example, in August of 2004, Mr. Pulver became aware that a Nebraskan native attending school in Colorado died of acute alcohol toxicity in a fraternity house on campus.  Mr. Pulver believes that if some college

3

students changed their lifestyles, such needless tragedies could be prevented.

18.    Mr. Pulver's message is one of hope and salvation that he believes his particular religion extends. He attempts to evangelize and witness to others about the benefits of his faith.

19.    Mr. Pulver has no intent to physically touch or harass anyone, or to encourage violence, or to express himself in any way other than in a peaceful manner. Mr. Pulver has no intent to encroach upon the private property of any person or entity.

20.    Mr. Pulver does not indiscriminately point people out or call them names, nor does he personally insult anyone. He refers to the Ten Commandments and communicates in a general way about behavior that he believes God considers sinful.

21.    In Mr. Pulver's attempts to reach individuals with his message, he usually engages in unamplified "preaching," a means of communication that consists of open-air speaking on religious topics. Mr. Pulver also seeks to hand out religious pamphlets and converse with individuals one-on-one. During the course of his expression, Mr. Pulver encourages intellectual dialogue on the moral issues of the day.

22.    Mr. Pulver utilizes open-air preaching on the public ways as his primary mode of communication because it is the best way for him to generate and reach his intended audience. He does not seek assistance from the Christian groups on college campuses to help organize an official room or forum for him in which to speak, because his target audience is precisely those students who would not attend such events.

23.    On six different occasions during March and April of 2005, Mr. Pulver attempted to speak in public areas near Hastings College for the purpose of expressing his religious message.

4

24.     On the first three occasions, Mr. Pulver encountered some complaints from a few individuals affiliated with the college, but did not encounter any difficulty from the police in exercising his free speech rights.

25.     However, on the last three occasions that Mr. Pulver attempted to speak in these public areas, police officers with the City of Hastings Police Department interfered with Mr. Pulver's speech in a significant way.

26.     On Mr. Pulver's fourth visit to the public ways near Hastings College, on April 8, 2005, he positioned himself on a public sidewalk on Ninth Street, a public street in the City of Hastings. Mr. Pulver stood on the south side of Ninth Street, in a grassy area between the curb and the sidewalk. Mr. Pulver positioned himself there because that location was near the Hastings College campus where he could converse with students. Mr. Pulver went there for the specific purpose of expressing his religious message.

27.     While standing on this public way, Mr. Pulver encountered Officer Walton and Officer Story, who warned Mr. Pulver in an aggressive manner that he must cease his peaceful speech. These police officers informed Mr. Pulver that he was purportedly "disturbing the peace."

28.     As a result of the exchange with these police officers, Mr. Pulver ceased his peaceful speech that day, and left the public way.

29.     Upon Mr. Pulver's fifth visit to public ways near Hastings Collge, on April 15, 2005, he stood on the same sidewalk situated on the south side of Ninth Street. While there, Mr. Pulver was met by an unidentified police officer with the City of Hastings. This police officer promptly told Mr. Pulver: "I need you to quiet down."

30.     The Hastings police officer informed Mr. Pulver it was his "last warning,"

5

then got in his cruiser, and drove away.

31.    Mr. Pulver's sixth and last visit to public ways near Hastings College was the following week, on April 22, 2005. On this day, Mr. Pulver once again placed himself on the sidewalk on south side of Ninth Street for the purpose of expressing his religious message.

32.    Mr. Pulver began to speak, and after about fifteen minutes of this activity, he was approached by Officer Walton of the Hastings Police Department.

33.    Officer Walton instructed Mr. Pulver that he could not continue speaking because he was supposedly "disturbing the peace."

34.    Mr. Pulver advised the officer that he was merely preaching and did not intend to disturb the peace. Officer Walton responded: "We've had a complaint already. So, yes, you are disturbing the peace."

35.    Officer Walton told Mr. Pulver that he was "yelling and causing a disturbance." Mr. Pulver tried to explain that he was not yelling, commenting: "[I am] lifting up my voice and preaching, the wind is making more noise than I'm making…There's stereos going by and making more noise than me."

36.    Officer Walton informed Mr. Pulver, however, that he was "bothering" people. Mr. Pulver urged the officer not to employ such an arbitrary gauge because it is purely subjective.

37.    Officer Walton reiterated to Mr. Pulver that he was "disturbing the people passing through here…", explaining that, "you're disturbing the peace because they don't like …what they're hearing."

38.    Officer Walton added that if members of the Ku Klux Klan tried to speak in the public ways, "yelling at people…shouting their white supremacist garbage, they

6

would get the same speech that you're getting right now."

39.     Mr. Pulver requested that Officer Walton supply the basis for squelching his speech on a city sidewalk, stating: "That's all I want is if you'd tell me what law I'm breaking. All you've told me is, well, somebody didn't like what I was saying."

40.     In response to Mr. Pulver's request to identify a law that he was violating with his speech, Officer Walton kept referring to Mr. Pulver's expression as "disturbing the peace" and "bothering people."

41.     Mr. Pulver also asked about an objective measure for judging noise level. He queried: "Do you have a noise decibel rating, a noise level here that I'm breaking? Do you have a standard?" To which, Officer Walton replied: "You're disturbing, you're disturbing the people passing through here, okay? You need to stop."

42.     Officer Walton threatened Mr. Pulver with citation (or a ticket), arrest, and/or a court appearance thirteen times during the course of their conversation.

43.     For fear of arrest, Mr. Pulver complied with Officer Walton's demands and ceased engaging in his peaceful speech.

44.     In an effort to resolve the situation, Mr. Pulver went directly to the Hastings police station and spoke with Chief Thoren, the police chief for the City of Hastings, about his religious expression on public ways in Hastings. Mr. Pulver confirmed that he was not trying to cause trouble but merely wanted to engage in peaceful speech.

45.     During the course of this conversation, Chief Thoren told Mr. Pulver that while the laws are black and white, application of those laws is a matter of interpretation.

46.     Chief Thoren also informed Mr. Pulver that "disturbing the peace would

7

be most applicable" to Mr. Pulver's situation.

47.     On August 3, 2005, Mr. Pulver, through counsel, sent a letter to Chief Thoren, advising him of Mr. Pulver's deprivation of constitutional rights by the policy and actions of the Hastings police department. Specifically, Mr. Pulver challenged the policy of the Hastings Police and the actions of Officer Walton, and the other Hastings police officers, who squelched Mr. Pulver's right to speak on a public sidewalk. Mr. Pulver sought relief and/or any clarification to the policy that would allow him to express his message on public sidewalks and written assurance that the "disturbing the peace" law and policy would not be applied to his peaceful speech in the future.

48.     On August 12, 2005, counsel for City of Hastings sent Mr. Pulver's counsel a brief letter stating that in the City of Hastings, Mr. Pulver "always has and will continue to enjoy all the rights encompassed within the constitution," reflecting a refusal to acknowledge the violation of Mr. Pulver's constitutional rights. Counsel failed to explain or even address the city's policy regarding restrictions on speech on the public ways, or its application of "disturbing the peace" law.

49.     Hastings City Code Ordinance § 18-113, "Disturbing the Peace," reads as follows:

> It shall be unlawful for any person within the City to intentionally disturb the peace and quiet of any other person, family, or neighbor, or any public assembly of persons for religious worship or for any other purpose, by any loud or unusual noise, boisterous laughing or talking, hollering, quarrelling, swearing, obscene or indecent language, or by any other manner or device whatsoever.

50.     According to the ordinance, it is unlawful to disturb someone by making "loud . . . noise," or by "boisterous talk, hollering," or "by any other manner or device." In application, any speech that "bothers" people is violative of this law.

8

51.     Mr. Pulver has not returned to speak on the public ways near Hastings College since his ouster in April of 2005. As a result of his ouster and the repeated threats of citation and/or arrest, Mr. Pulver has given up any hope of speaking on public ways near Hastings College and he has abandoned his First Amendment rights in the area.

52.     The fear of citation and/or arrest severely limits Mr. Pulver's constitutionally protected speech on the public ways of the City of Hastings.

53.     Mr. Pulver strongly desires to share his religious message on public ways near Hastings College again, and would do so, but he is chilled and deterred from expressing his message on public ways in this area for fear of citation and/or arrest.

54.     The impact of deterring Mr. Pulver from exercising his constitutional rights on public ways on the streets of the City of Hastings constitutes irreparable harm to Mr. Pulver.

55.     Mr. Pulver does not have an adequate remedy at law for the loss of his constitutional rights.

### FIRST CAUSE OF ACTION

### Violation of the Due Process Clause - U.S. Constitution

56.     Hastings City Code Ordinance § 18-113 is unconstitutionally vague on its face. The ordinance contains undefined terms that fail to provide any discernable meaning. As a result, individuals of common intelligence must guess at the meaning and differ as to its application.

57.     The terms and phrases "disturbs the peace and quiet" "loud," "unusual," "boisterous talking," "hollering," and "by any other manner or device" are all unconstitutionally vague on their face.

9

58.    This ordinance does not adequately notify persons of what expression is prohibited and of what speech constitutes a crime.

59.    Furthermore, Defendants have applied the aforementioned ordinance in an *ad hoc* and arbitrary manner against Mr. Pulver and his religious speech by criminalizing speech that "bothers" people.

60.    The ordinance is violative of the due process clause as construed and applied to the individual speech of Mr. Pulver.

61.    The ordinance, on its face, and as applied, is violative of the due process clause of the Fourteenth Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION

**Violation of the Freedom of Speech - U.S. Constitution**

62.    The City of Hastings Ordinance § 18-113 inhibits speech, on its face, and in its application, by prohibiting speech on the public ways that "disturbs the peace" and "bothers" people.

63.    This provision allows police officers to prohibit speech that disturbs the peace.  As applied, it prohibits speech that bothers people, creating an illegal heckler's veto.

64.    This provision, as applied, supplies police officers with unfettered discretion in judging what constitutes "disturbing the peace."

65.    In application, Defendant Officers Walton and Story arbitrarily applied this provision to Mr. Pulver while he was attempting to engage in free speech.

66.    Therefore, City of Hastings Code Ordinance § 18-113 is unconstitutional on its face, and as applied, in violation of the free speech clause of the First Amendment

of the United States Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kevin Pulver respectfully requests the following relief:

A.      That this Court enter a declaratory judgment stating that City of Hastings Code Ordinance § 18-113, "Disturbing the Peace" is facially unconstitutional and violative of Plaintiff's rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

B.      That this Court enter a declaratory judgment stating that the City of Hastings Code Ordinance § 18-113, "Disturbing the Peace" is unconstitutional as applied to Plaintiff Kevin Pulver's religious speech and violative of Plaintiff's rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

C.      That this Court enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from enforcing and applying City of Hastings Code Ordinance § 18-113 so as to restrict constitutionally-protected speech on the public ways in the City of Hastings;

D.      Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

E.      That this Court award Plaintiff Kevin Pulver actual damages for injuries sustained in this matter;

F.      That this Court award Plaintiff Kevin Pulver nominal damages arising from the acts of the Defendants as an important vindication of the constitutional rights at

stake;

G.    That this Court award Plaintiff Kevin Pulver his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H.    That this Court grant such other and further relief as this Court deems equitable and just.

### VERIFICATION OF COMPLAINT

I, Kevin Pulver, a citizen of the United States and a resident of Kenesaw, Adams County, Nebraska, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

Kevin Pulver

12

Respectfully submitted,

BY:

Nathan W. Kellum
ALLIANCE DEFENSE FUND
TN BAR #13482; MS BAR # 8813
(pending admission *pro hac vice*)
P.O. Box 11159
Memphis, TN 38111
(901) 323-6672 telephone
(901) 323-6674 – Fax

Delia van Loenen
ALLIANCE DEFENSE FUND
MA Bar # 664233; ME Bar # 009873
(pending admission *pro hac vice*)
15333 N. Pima Road, Suite 165
Scottsdale, AZ 85260
(480) 444-0020 telephone
(480) 444-0028 – Fax

Attorney for Plaintiff Kevin Pulver

Benjamin W. Bull *(of counsel)*
ALLIANCE DEFENSE FUND
AZ Bar # 009940
15333 N. Pima Road, Suite 165
Scottsdale, AZ 85260
(480) 444-0020 telephone
(480) 444-0028 – Fax

Attorneys for Plaintiff Kevin Pulver

13